Owen, J.
Divested of all circumstances from which fraud or bad faith may bo imputed to the transaction now under consideration, the following is a fair statement of the facts found by the court below:
Carlins & Co., a partnership, was engaged in private banking. It issued its certificate of deposit, in the usual course of business, to a depositor. Thereafter, the savings bank, a corporation, was organized and proceeded to do a banking business at the banking room of Carlins & Co., who proceeded to wind up their business by redeeming, at the counter of the savings bank, acting by its cashier, their outstanding certificates of deposit, either by cash or certificate of the bank as the holder should elect; Carlins & Co. being charged on the books of the bank with the amounts of the certificates redeemed. The depositor of Carlins & Co. above named, knowing these facts, presented, his certificate of deposit at the counter of the bank for redemption. The cashier of the bank received it; computed the interest upon it; canceled it with the firm stamp of Carlins & Co.; issued a certificate of deposit of the bank for the amount; delivered it to the holder of the redeemed certificate; charged the amount of it against Carlins & Co. on the books of the bank, upon which was an entry, as a cash credit to Carlins & Co., of $84,000, the account showing a large credit balance in favor of the latter.
The certificate so issued was, from time to time, renewed by the bank by its own certificate until the one in suit was issued.
*651 Can the power of tbe bank to issue its certificate, in such a case, be seriously questioned ?
The power expressly conferred upon it by the law of its charter, was “ to receive on deposit for safe keeping, or making investments thereof, all sums of money that may be offered for that purpose” .... and to “purchase and sell promissory notes, drafts and bills of exchange, .... and transact such other business as properly pertains to the business of such associations not forbidden by the constitution and laws of this State.” JO O. L. 44, § 14.
The power to receive deposits carries with it the power to issue certificates therefor. Issuing, dealing in, buying and selling certificates of deposit, is one of the incidents of, and properly pertains to the business of banking. Receiving, at their request, the certificates of Carlins & Co. and issuing its own certificates or paying its money therefor, charging the amount of them against their credit on the bank books, was in itself harmless and'in the proper course of its business.
But it is maintained that the real transaction involved in this case, was characterized by circumstances of fraud and bad faith which call upon the court to leave the parties where it found them. These- circumstances are briefly as follows s The cashier of the bank was a member of Carlins & Co., and was acting at the same time, and in the same transaction, for the bank and for his own firm. The entries on the books of the bank, which appeared as a cash credit of $84,000, were unauthorized, and did not in fact represent cash deposits, and were not entitled to stand as cash credits. The other trustees and stockholders of the bank had no knowledge of the redemption at their bank of- the certificates of Carlins & Co., or of the transaction leading to the entry itself. The plaintiff 'below had knowledge that Carlins & Co. were closing up their business, and of the incorporation of the bank. Car-lins & Co. in fact had no money in the savings bank with which to redeem their certificates, but were debtors of the bank in the sum of $39,000 when the certificate in suit was issued. Promptly on discovering the real character of the $84,000 *652 credit, but after the issuing of the last certificate to the plaintiff below, the trustees repudiated it and the transaction which led to it.
Do these circumstances so far characterize or qualify the transaction as to defeat the liability which would otherwise attach to the bank? If they do, it is so not by reason of want of authority in the officers of the bank, but by reason of their fraud and bad faith in the performance of their trust. But to give this effect to their acts, it is necessary so far to connect the plaintiff below with their fraudulent conduct as, practically, to make him a party to it, and thus, by the operation of the very familiar rule which requires a party seeking to enforce his rights or redress- his wrongs to go with clean hands into court, the law must refuse him relief. The plaintiff knew that the cashier of the bank was a member of Car-lins & Co.; that his certificate did not represent money actually deposited by him ; that upon the issuing of the bank certificate in lieu of that of Carlins & Co. the latter were charged with the amount of it on the books of the bank. But he also knew, at the time of the issuing of this last certificate, that for two years such had been the customary course of dealing at the bank. We are to suppose he knew (in the absence of knowledge of fraud or bad faith) that the officers in charge of the bank were acting within the due course of their employment and authority.
Corporations are liable for the acts of their servants, while engaged in the business of their employment, in the same manner and to the same extent that individuals are liable under like circumstances. Merchants’ Nat. Bank v. State Nat. Bank, 10 Wall. 604; Thayer v. Boston, 19 Pick. 511; Frankfort Bank v. Johnson, 24 Me. 490.
The trustees constituted the bank officers and clothed them with power to act for and bind the bank in all matters pertaining to its business. Those who create the trust, appoint the trustee, and clothe him with the power that enables him to mislead, ought, if there is misleading, to suffer rather than an innocent party. Farmers’ & Mech. Bank v. Butchers’ & *653 Drovers' Bank, 16 N. Y. 133; Merchants Nat. Bank v. State Nat. Bank, 10 Wall. 604.
It is assumed in argument, however, that Blakesley is not an innocent party, that he was, in reality, a party to the fraud of the bank officers. Is this assumption justified by the facts? We have called attention to the facts within his knowledge. But he did not know that the credit of $84,000 to Carlins & Co. was unauthorized; that Carlins & Co. were in fact insolvent; that they had no money with which to redeem their outstanding certificates; nor that the other trustees of the bank were ignorant of the manner in which the affairs of the bank were being conducted. If these trustees succeeded in keeping themselves profoundly ignorant, for more than two years, of what was transpiring at their bank, it certainly was not the fault of Blakesley, and we know of no rule of law or of fair dealing which calls upon us to visit their neglect upon his head. True, Isaac Blakesley, the father and agent of the plaintiff below, was also a trustee of the bank, and while the court below was right in treating his knowledge as that of his principal, we are not to impute to the latter (an infant), notice or knowledge of any fact which his agent may be held, by legal construction or presumption, to have known as a trustee.
In our opinion, too much importance is given to the fact that these trustees were ignorant of the transactions of the officers of the bank. Parlee Carlin, the president, M. D. Sours, treasurer and cashier, and L. C. Carlin, assistant cashier, were supreme in the conduct of the daily business of the bank. They were the only officers or agents competent to speak for it or bind it in any of its business affairs. Notice to a trustee, not otherwise an officer, would have been no notice to the bank of any matter within the peculiar control of the officers in charge. Blakesley had good right to suppose that the facts within his knowledge were as well and fully known to the other trustees.
But it is maintained by the bank that the facts shown to have been within his knowledge were sufficient to put him *654 upon inquiry, and that be is to be charged with the knowledge of such facts as by reasonably diligent inquiry be could have acquired. Let this be granted. Inquiry at the bank, of its officers, or even an inspection of its books, would have disclosed to him a large cash balance to the credit of Carlins & Co. Beyond this he would not be required to go. To have plied the officers of the bank with the inquiry if the credit entries in the books were fictitious or unauthorized, or if their conduct of its affairs was fraudulent, would have been an impertinence. But we are not able to see anything in his conduct or in the facts within his knowledge, to connect him with any fraud or bad faith in this transaction which should, for that reason, defeat his recovery.
The vital and decisive question, then, upon which must rest the determination of this controversy, is not one of the fraud or bad faith of the officers of the bank, but of their authority to act for and bind it. If Carlins & Co. had in fact had a cash credit at the bank against which to charge the amount of their certificates redeemed, would not this transaction have been utterly unassailable, and the bank liable upon this certificate ? It seems very clear to us that it would; and as we may treat the credit entries as genuine, in the absence of fraud or bad faith on the part of the plaintiff below; and as the subject of the transaction was within the course of the employment of the officers and of the business of the bank, we might safely rest our conclusion upon this view. If the contract is within the authority of the officers, and would be valid and bind the bank under any circumstances, an innocent party has a right to presume their existence, and the bank is estopped to deny them. Merchants’ Nat. Bank v. State Nat. Bank, supra. If the transaction “ properly pertains to the business of such associations,” the fraud or bad faith of the managing officers constitutes no defense as against an innocent party. The fact that the cashier of the bank was also a member of Cailins & Co. ought not to limit or qualify his authority as cashier, while dealing with a party acting in good faith and without knowledge of the fraud or bad faith of such cashier.
*655 It is maintained further, however, that as the bank owed Blakesley nothing, and as he deposited nothing with it, this certificate is without consideration to support it, and for this reason cannot be enforced against the bank.
He surrendered his certificate against Carlins & Co. and with it his right to pursue them upon it. It was canceled, and he accepted in lieu of it that of the bank, which charged up the amount of it to Carlins & Co. Then it should not be forgotten that when the Carlins & Co. certificate was pre* sented, it was good. The credit of Carlins & Co. was then unimpaired. They were promptly redeeming their certificates with cash if the holders desired. These facts not only furnish sufficient consideration to uphold this certificate as the promise of the bank, but should estop it from asserting in defense that it is without consideration.
We are unaided in our consideration of this case by briefs or arguments from the defendant in error. Whether the conclusions of law stated by the court below in its findings are fully supported by the facts found, it is unprofitable to inquire, if in fact the judgment finally rendered by it is sustained by the facts.
We find, that it is, and accordingly affirm it.

Judgment affirmed.